## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CARLOS ESPINO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 11-1436 (ESH) |
| | ) |
| UNITED STATES DEPARTMENT OF JUSTICE | ) |
| | ) |
| Defendant. | ) |

## <u>MEMORANDUM OPINION</u>

In this *pro se* action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, plaintiff seeks, *inter alia*, DNA testing records related to his 1998 criminal conviction in the Superior Court of the District of Columbia (Case No: F-4313-98).  Based on the pleadings and an *in camera* review of the records, the Court will grant defendant's motion for summary judgment and deny plaintiff's cross-motion for summary judgment.

## BACKGROUND

Plaintiff Carlos Espino is incarcerated in federal prison in West Virginia, where he is serving a life sentence for rape as a result of his 1998 conviction.  In 2009, plaintiff filed a FOIA request with the Office on Violence Against Women ("OVW") of the United States Department of Justice, seeking all records relating to his prosecution, and in particular, the results of DNA testing.  (Defendant's Motion for Summary Judgment ("Def. Mot."), Feb. 22, 2012 [Dkt. No. 12], Ex. 5 ("Poston Decl.") ¶ 4.)  Because OVW does not maintain files relating to criminal matters, OVW informed plaintiff that it had no responsive materials.  (*Id.* ¶¶ 4-5.)  Plaintiff then

appealed to the DOJ's Office of Information Policy, which upheld OVW's response but advised plaintiff to file a similar request with the Executive Office for the United States Attorneys ("EOUSA").  (Poston Decl., Ex. D.)  Espino followed that advice.  (Def. Mot., Ex. 3 ("Kornmeier Decl.") ¶ 3.)

EOUSA and the U.S. Attorney's Office for the District of Columbia conducted a search that turned up responsive records that had originated with the Federal Bureau of Investigation.  (*Id.* ¶ 5.)  EOUSA returned the documents to the FBI for processing and release to Espino.  (*Id.*)  Of the 102 pages of responsive documents, the FBI released 89 pages in full or in part.  (Def. Mot., Ex. 1 ("Hardy Decl.") ¶ 7).  The FBI removed five pages as duplicates and withheld eight pages.  (*Id.* ¶ 4.)  Those withholdings and the redactions of the released pages, were made pursuant to FOIA Exemptions 6 and 7(C).  (*Id.* ¶ 7 (citing 5 U.S.C. §§ 552(b)(6) & (7)(C)).)  After receiving those documents, plaintiff sent a letter to the FBI stating that he had received the wrong documents, since he was looking for DNA testing results from an event that occurred on March 2, 1998.  (Hardy Decl. ¶ 8.)  After plaintiff's administrative appeal failed (¶¶ 9-11), plaintiff filed this suit, and, in particular, he sought the lab report from DNA testing related to the March 2, 1998 incident.  (*Id.* ¶ 12.)  In response to the lawsuit, the FBI conducted its own search for responsive documents.  That search turned up an additional 16 pages reflecting the March 2 incident, including the DNA testing, and these were released with redactions made pursuant to FOIA Exemptions 6 and 7(C).  (*Id.* ¶ 14.)

## ANALYSIS

## I.    LEGAL STANDARD

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009).  The party

moving for summary judgment has the burden of showing that "there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  An agency defendant in a FOIA case is entitled to summary judgment if it shows that it has performed an adequate search for the documents responsive to the request and has either produced such documents or shown that it is justified in withholding them.  *Students Against Genocide v. U.S. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001).  In FOIA cases summary judgment can be granted based solely on agency affidavits if "the affidavits describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record []or by evidence of agency bad faith."  *Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C. Cir. 1981).

## II.    ADEQUACY OF THE SEARCH

Contrary to plaintiff's claim, DOJ's search for documents responsive to plaintiff's FOIA requests was adequate.  DOJ was obliged to execute a search that was "reasonably calculated to recover all relevant documents."  *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).  Plaintiff contends that the search was inadequate because it did not produce documents that he believes exist.  However, a search is not inadequate simply because it failed to turn up a document that he believes must exist, or even a document he knows to exist.  *See, e.g.*, *Iturralde v. Comptroller of the Currency,* 315 F.3d 311, 315 (D.C. Cir. 2003) ("[I]t is long settled that the failure of an agency to turn up one specific document in its search does not alone render a search inadequate."); *Meeropol v. Meese*, 790 F.2d 942, 952-53 (D.C. Cir. 1986) ("[A] search is not unreasonable simply because it fails to produce all relevant material . . . .").  "[T]he

adequacy of a FOIA search is generally determined not by the fruits of the search, but by the methods used to carry it out." *Iturralde*, 315 F.3d at 315.  In the end, "[m]ere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." *SafeCard Servs. Inc. v. Sec. Exch. Comm.*, 926 F.2d 1197, 1201 (D.C. Cir. 1991).

The declarations submitted by the DOJ to demonstrate the adequacy of its search are sufficiently detailed and non-conclusory.  *See Weisberg,* 705 F.2d at 1351.  The Court must presume that they were submitted in good faith.  *SafeCard*, 926 F.2d at 1200.  The declarations describe OVW's decision not to search for records because it does not maintain records relating to prosecutions.  (Poston Decl. ¶ 5.)  They also describe the search for documents conducted by the United States Attorney's Office for the District of Columbia of their various record systems, its discovery of responsive documents and the reproduction and delivery of those documents to EOUSA.  (Def. Mot., Ex. 4 ("Kelly Decl."), ¶¶ 6-15).  The declarations further recount the referral of those documents to the FBI, which was the originating source.  (Kornmeier Decl. ¶ 5.) Finally, the declarations detail the FBI's search of its own electronic records after the lawsuit had been filed, which turned up 16 more pages of responsive documents.  (Hardy Decl. ¶¶ 15-21.)

Furthermore, it appears that the document that was of special interest and concern to the plaintiff – *i.e.*, the DNA testing results from March 2, 2008 – was in fact found by the FBI during its search.  Even though this document was not produced until after litigation commenced, that does not render the search inadequate.  *Nat'l Inst. of Military Justice v. U.S. Dep't of Defense*, 404 F. Supp. 2d 325, 333-34 (D.D.C. 2005).

The presumption of good faith that the Court affords defendant's declarations cannot be overcome "by 'purely speculative claims about the existence and discoverability of other

4

documents.'"  *SafeCard*, 926 F.2d at 1200 (quoting *Ground Saucer Watch, Inc. v. Central Intelligence Agency*, 692 F.2d 770, 771 (D.C. Cir. 1981)).  The Court therefore concludes that defendant's search for responsive documents was adequate.

### III.    FOIA EXEMPTIONS 6 & 7(C)

After an *in camera* review of the documents in question, this Court finds that the government's redactions are appropriate under FOIA Exemptions 6 and 7(C).  5 U.S.C. § 552(b)(6) & 7(C).  Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  *Id.* § 552(b)(6).  Exemption 7 applies to "records or information compiled for law enforcement purposes, *id.* § 552(b)(7), and subsection C allows the withholding of such records when their release "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  *Id.* § 552(b)(7)(C).[1]

Exemption 7(C) is significantly broader than Exemption 6 in two ways.  *Reporters Comm.*, 489 U.S. at 756.  First, while Exemption 6 allows withholdings where disclosure would effect a "clearly unwarranted" breach of privacy, the adverb "clearly" is omitted from 7(C).  *Id.* Secondly, whereas Exemption 6 only allows redactions where disclosure "would constitute" a breach of privacy, Exemption 7(C) allows redactions where disclosure "could reasonably be expected to constitute" such a breach.  *Id.*  Therefore, if the documents in question were "compiled for law enforcement purposes" such that Exemption 7(C) might apply, the Court need not address Exemption 6.  *Amer. Civil Liberties Union v. U.S. Dep't of Justice,* 655 F.3d 1, 6 (D.C. Cir. 2011).

---

[1] Exemption 6 and Exemption 7(C) both require the weighing of personal privacy interests in non-disclosure against the public interest in disclosure.  *U.S. Dep't of Justice v. Nat'l Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 756 (1989).

The documents which have been produced were clearly "compiled for law enforcement purposes." The "law enforcement purposes" claim of a law enforcement agency, such as the FBI, is accorded greater deference than a similar claim made by a mixed function agency. *Keys v. U.S. Dep't of Justice*, 830 F.2d 337, 340 (D.C. Cir. 1987). In order to meet the law enforcement threshold, an agency must show a nexus between the documents at issue and the agency's law enforcement duties that is supported by "at least 'a colorable claim' of its rationality." *Pratt v. Webster,* 673 F.2d 408, 421 (D.C. Cir. 1982). The documents in this case were compiled during a rape investigation (Hardy Decl. ¶ 28), and are clearly related to the FBI's law enforcement duties. Thus, the government has crossed the Exemption 7 threshold.

The majority of the redactions in the documents at issue are names and other identifying information of third parties, including the victim, investigators, other FBI personnel, and other federal employees. Courts have routinely upheld such withholdings under 7(C). *See Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1174 (D.C. Cir. 2011); *SafeCard,* 926 F.2d at 1206 ("We now hold categorically that, unless access to the names and addresses of private individuals appearing in files within the ambit of 7(C) is necessary to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure."). Because plaintiff has not produced any evidence of government wrongdoing, these names and other identifying information are protected by Exemption 7(C).

Additionally, the FBI redacted several lists of "items recovered from victim," and other information of a personal and a medical nature. Releasing such information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Its release could have emotionally damaging effects on the victim and her family. *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 167 (2004) (the pain that might

be suffered by the family that experienced a suicide upon the release of death photos was a significant privacy interest that weighed against disclosure of the photos).  Although this significant privacy interest must be weighed against the public interest, *Nat'l Reporters Comm.*, 489 U.S. at 756, the public interest in the police procedures relating to DNA testing in this particular case is minimal, and plaintiff's personal interest in the procedures of this case does not factor into the Court's analysis.  *Roth,* 642 F.3d at 1177*; Mays v. Drug Enforcement Admin.*, 234 F.3d 1324, 1327 (D.C. Cir. 2000).  The Court concludes that the withholding of such information under FOIA Exemption 7(C) was proper.

## IV.    SEGREGABILITY

Under FOIA, all "reasonably segregable" non-exempt material – that which is not "inextricably intertwined" with exempt material – must be released.  *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1027 (D.C. Cir. 1999).  The Court has an affirmative duty to address the segregability issue *sua sponte*.  *Id.* at 1028.  After an *in camera* review of all of the redacted documents, the Court is satisfied that all reasonably segregable non-exempt information has been released.

## CONCLUSION

For the reasons stated above, defendant's motion for summary judgment is granted and plaintiff's cross-motion for summary judgment is denied.  A separate Order accompanies this Memorandum Opinion.

_____/s/_____

ELLEN SEGAL HUVELLE
United States District Judge

Date:   June 20, 2012